# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:13-cr-00002-HDM-VPC |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| FABIAN BARRAGAN LOMBERA, | ) | |
| Defendant. | ) | |

Defendant filed a motion for reconsideration and to stay the final order of judgment (#59) on May 11, 2015, which the court shall consider a motion for an extension of time to file a reply brief.

Defendant contends he did not receive the response filed by the government on March 30, 2015. *See* Mot. at 2. As defendant filed the instant motion timely pursuant to FRAP 4(a), the court will vacate its order denying his habeas motion under 28 U.S.C. § 2255 and grant him an extension to file a reply.

Accordingly, and based on the foregoing, the court hereby **GRANTS** defendant's motion (#59). The court extends the time for

1

defendant to file a reply to the government's response to June 5, 2015.[1]

    IT IS FURTHER ORDERED the court's order of April 27, 2015 (#58) is vacated pending consideration of any reply filed by defendant.

    IT IS SO ORDERED.

    DATED: This 14th day of May, 2015.

*Howard D. McKibben*
_____
UNITED STATES DISTRICT JUDGE

---

[1] The government's response is attached to the order as Exhibit 1.

# EXHIBIT 1

# EXHIBIT 1

DANIEL G. BOGDEN
United States Attorney
CAMILLE DAMM
Assistant United States Attorney
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
702-388-6336

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 3:13-cr-002-HDM-VPC |
| Plaintiff, | **RESPONSE TO 28 USC § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE OF PERSON IN FEDERAL CUSTODY** |
| vs. | |
| FABIAN BARRAGAN LOMBERA, | |
| Defendant. | |

The United States of America by and through Daniel G. Bogdan, United States Attorney, and Camille W. Damm, Assistant United States Attorney, hereby responds to the above captioned motion.

I.

**JURISDICTION**

Petitioner Fabian Barragan Lombera is in federal custody serving a 188-month sentence imposed by this Court pursuant to his guilty plea to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). Doc. # 43. Lombera is incarcerated at Sheridan FCI, with a projected release date of August 13, 2026. www.bop.gov.

1

The instant motion is Lombera's first claim for relief under 28 U.S.C. § 2255. He timely filed the motion on November 10, 2014, (Doc. # 48) within one year after this Court's entry of judgment on January 3, 2014 (Doc. # 43).

This Court has jurisdiction under 28 U.S.C. § 2255.

## II.

## STATEMENT OF THE CASE

A.   PROCEDURAL HISTORY

On July 24, 2013, Lombera pled guilty in this Court to possessing with intent to distribute 500 grams or more of methamphetamine. Doc. # 29. On December 23, 2013, this Court sentenced him to a term of 188 months' imprisonment pursuant to a one-level downward variance from the 210 to 262 guideline range. RT Sentencing 19-22.

Lombera did not file a direct appeal.

On January 3, 2014, Lombera filed the instant § 2255 motion alleging ineffective assistance of counsel. Doc. # 48.

B.   STATEMENT OF FACTS

Pursuant to the plea agreement, the parties agreed upon the following facts:

According to discovery provided by the government, on December 19, 2012, members of the Reno Police Department Street Enforcement Team (SET) met with a confidential source (CS), who claimed he could set up the delivery of 12 pounds of methamphetamine to Reno from a source he knew as "Tinzoo" (later identified as Lombera) in Fresno, California. Doc. # 29, pp.3-4.

The next day, December 20, 2012, at about 12:23 a.m., a SET Detective monitored a phone call from the CS to "Tinzoo," to purchase methamphetamine. Tinzoo said he couldn't deliver 12

pounds, but that he could deliver 7 pounds of methamphetamine and would leave Fresno in the morning. *Id.* at 4.

About 10:55 a.m., in a monitored call with the CS, Tinzoo said he was getting ready to leave Fresno, driving his own vehicle, and should be in Reno at about 3:30 p.m. The CS advised that Tinzoo owned and drove a gold and orange Nissan Murano. The CS also said that Tinzoo often used a second vehicle driving in tandem when trafficking methamphetamine. *Id.*

At about 2:00 p.m., the CS made a monitored call to Tinzoo, in which Tinzoo said that they were on the way and he was arriving in Sacramento. They agreed to meet at a hotel room Tinzoo reserved for the transaction. *Id.*

At about 3:52 p.m., in a monitored call from the CS, Tinzoo said he was passing Rocklin, California and that, upon arriving in Reno, he would park his vehicle and take a rental car to the drug transaction. *Id.*

In a monitored call at about 4:55 p.m., the CS and Tinzoo agreed to meet just outside of Reno, Nevada, at a Chevron station next to Boomtown Casino. At about 6:30 p.m., a DEA Task Force Officer saw an SUV matching the description of Tinzoo's gold and orange Murano exit Interstate 80 at the Boomtown exit followed by a sedan. The vehicles traveled in tandem to the Chevron gas station adjacent to Boomtown Casino where agents converged on them. Lombera was the driver and sole occupant of the Murano, which a registration check confirmed he owned. The CS identified Lombera as the person he knew as Tinzoo. *Id.* at 4-5.

In the Murano's dashboard, officers found five individually wrapped packages of a substance that field-tested positive for the presence of methamphetamine. Laboratory analysis determined the packages contained 2184 grams of actual methamphetamine. *Id.* at 5.

3

## III.

## ARGUMENT

A. LOMBERA FAILS TO ESTABLISH INEFFECTIVE ASSISTANCE OF COUNSEL.

    1.    <u>Ineffective Assistance Of Counsel Claims Face A High Bar</u>.

Pursuant to § 2255, a federal inmate may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Ineffective assistance of counsel is a cognizable claim under § 2255. *Bauman v. United States*, 692 F.2d 565, 581 (9th Cir. 1982). In order to prevail on such a claim, the defendant must meet a two-prong test to show both deficient performance of counsel and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, the defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Deficient performance is demonstrated when "counsel made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance." *Id.* at 689; *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986). There is an additional strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible

reasons counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted). A tactical decision by counsel cannot form the basis of an ineffective assistance claim. *Strickland*, 466 U.S. 689; *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).

Second, if there was a deficiency in counsel's performance, the defendant must show that it prejudiced his defense. *Strickland*, 466 U.S. at 687. This requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to under confidence in the outcome." *Id.* at 694.

The Supreme Court recently re-emphasized the burdens a defendant must overcome to establish ineffective assistance of counsel:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 787-88 (2011) (citations and quotations omitted).

Since a defendant must show both deficient performance and prejudice in order to establish a meritorious claim of ineffective assistance of counsel, *Williams v. Calderon*, 52 F.3d 1465, 1469

5

(9th Cir.1995), there is no need to evaluate counsel's performance if he fails to show his defense was prejudiced by counsel's alleged errors. *Strickland,* 466 U.S. at 697.

### 2. Lombera Fails to State a Case of Ineffective Assistance of Counsel.

Lombera alleges ineffective assistance based on counsel's failure to seek suppression of evidence (1) obtained as a result of dog sniffs and (2) from an unwarranted search of his vehicle. Relief is unwarranted under the standards of *Strickland v. Washington,* 466 U.S. 668 (1984). His claims are stated, in full, as follows:

> DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO SEEK SUPPRESSION ALL OF THE EVIDENCE OBTAINED BY THE DOG SNIFFS.
> In the instant case, the police's use of a dog to sniffs without a valid search warrant under precedent from the Supreme Court of the United States.

Motion at 5 (on motion form).

> DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO SEEK SUPPRESSIONOF ALL OF THE EVICENCE SEIZED WITHOUT A VALID SEARCH WARRANT AFTER HE HAD BEEN REMOVED AND SECURED.
> In the instant case, the police searched the Defendant's vehicles after he had been removed and secured in a patrol car and booked in jail in violation of precedents from the Ninth Circuit and the Supreme Court of the United States.

Motion at 6 (on motion form).

Lombera's motion fails to state a claim. His bare statements that counsel failed to move for suppression of evidence in violation of "precedent" are insufficient to establish either deficient performance or prejudice. Although pro se pleadings are liberally construed, pro se litigants are bound by the rules of procedure that govern other litigants. *Ghazali v. Moran,* 46 F.3d 52 (9th Cir.1995).

6

Lombera does not support his claims for relief with argument, citation to legal authority, or citation to the record. His claims are subject to dismissal as unduly vague and conclusory. *See United States v. Moss*, 2015 WL 251890, *6 (E.D. Cal. Jan. 20, 2015); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (vague or conclusory claims without supporting factual allegations warrant summary dismissal of § 2255 motion); *Jones v. Gomez*, 66 F3d 199, 204 (9th Cir. 1995) (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'")); *Schlette v. California*, 284 F.2d 827, 833 (9th Cir.1960) (Conclusory allegations not supported by facts will not suffice.); *see also* Rule 4, Rules Governing § 2254 Cases (Advisory Note, 1976 Adoption) (Notice pleading is insufficient, as a habeas petition must state facts that point to a real possibility of constitutional error.). As such, his motion fails on its face.

3.    The Record Does Not Support a Finding of Ineffective Assistance of Counsel.

Moreover, the record demonstrates that defense counsel's performance was exemplary and Lombera's claims fail on the merits. Defense counsel reviewed the discovery with Lombera "page by page." *See* Declaration attached at ¶ 5. She explained to him the statute, the sentencing guidelines and his trial rights. *Id.* Counsel discussed with him possible defenses and defense motions, including specifically the dog sniff and vehicle search and advised him, based on her research, the facts and the evidence, that he was unlikely to prevail on those motions.[1] *Id.* at ¶ 6. Whether or not to file a

---

[1] Lombera has presented nothing to undermine counsel's conclusion. The facts as set forth above and in counsel's Declaration establish probable cause to justify the searches. *See United States v. Mayorquin*, 2013 WL 5405704 (C.D.Ca. 2013) (unpublished) (denying defendant's motion to suppress narcotics based on reasonable suspicion for dog sniff and probable cause for vehicle search); *United States v. Johnson*, 2015 WL

7

suppression motion is a strategic choice of counsel rather than a decision made by a defendant. "[S]trategic choices [by counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 689-690; *Guam v. Santos,* at 1169 (tactical decision by counsel cannot form the basis of an ineffective assistance claim).

Moreover, in this case, Lombera told counsel that rather than pursue defense motions he wanted a favorable plea agreement. *See* Declaration at 7. The record of the change of plea is corroborative. This Court asked Lombera if he was satisfied with counsel's representation, to which he answered, "Yes, sir." RT Change of Plea 3. The Court further asked if counsel had failed to do anything he wanted her to do, to which he answered, "No, Sir." *Id.* Lombera specifically said he understood that he could not later present any defenses he may have had "for example, a violation of your Constitutional rights in connection with the search that was conducted." *Id.* at 6.

Finally, counsel did obtain a favorable plea agreement, providing for a three-level guideline reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, for a sentencing recommendation at the low-end of guideline range, and the right to argue for further sentencing reductions, and successfully argued for a downward variance from the guideline range. Declaration at ¶¶ 8-9; RT Sentencing 19-22.

The validity of a guilty plea depends on whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Signori,* 844 F.2d 635, 638 (9th Cir.1988) (quoting *Hill v. Lockhart,* 474 U.S. 52, 56 (1985)). "A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of

---

875016, 16-17 (D.Nev. 2015) (findings that reasonable suspicion justified extending traffic stop to obtain dog sniff and probable cause justified vehicle search).

8

the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." *Id.* Lombera does not challenge the guilty plea and the record demonstrates he entered it knowingly and voluntarily. *See* RT Change of Plea 3-8, 15-21.

There is no basis here to find either deficient performance or prejudice.

## CONCLUSION

Based on the foregoing, Lombera's Motion Pursuant to 28 U.S.C § 2255 to Vacate, Set Aside or Correct Sentence of a Person in Federal Custody should be denied.

**DATED** this 31st day of March, 2015.

        Respectfully submitted,
        DANIEL G. BOGDEN
        United States Attorney

        /S/ Camille W. Damm
        CAMILLE W. DAMM
        Assistant United States Attorney

## DECLARATION OF CHERYL FIELD-LANG, ESQ.

Comes now CHERYL FIELD-LANG, ESQ., and under penalty of perjury, declares as follows:

1. That Declarant is a licensed attorney in the State of Nevada and has been a criminal defense attorney for over twenty years.

2. That Declarant was counsel of record for Defendant/Petitioner Fabian Barragan Lombera, in the Federal District of Nevada case of United States of America v. Fabian Barragan Lombera, a/k/a Tinzoo, Case No. 3:13-cr-002-HDM-VPC;

3. That the Indictment charged Lombera with possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine;

4. That the essential facts include the following:

   a. A confidential source (CS) made a phone call, monitored by law enforcement, from Reno, Nevada, to the person he knew as Tinzoo, in Fresno California, to purchase twelve pounds of methamphetamine; Tinzoo said he would be able to deliver seven pounds of methamphetamine the next day;

  b. The next day the CS made calls to Tinzoo as he traveled to Reno; All of these calls were monitored by law enforcement; In the first call in the morning, Tinzoo said he would be in Reno that afternoon driving his vehicle, which the CS knew as a gold and orange Nissan Murano;

  c. The CS told detectives that Tinzoo often drove in tandem with a second car when making deliveries of methamphetamine and that the "tandem" vehicle was normally a rental car;

  d. In a call that afternoon, the CS and Tinzoo agreed to meet in a hotel room; In a later call, Tinzoo indicated he would park his car in Reno, remove the methamphetamine and take a rental car to the drug transaction; Tinzoo asked the CS to put $500 in his sister's bank account as a favor and the CS told Tinzoo had transferred money;

  e. About 5:21 p.m., that evening, the CS called Tinzoo and they agreed to meet in the area of Boomtown Hotel and Casino just outside of Reno; At about 6:05 p.m., they agreed to meet at the Chevron gas station adjacent to Boomtown. At about

6:30 p.m., a law enforcement officer saw a gold and orange Murano leave the interstate highway at the Boomtown exit, with a Toyota sedan following closely; The vehicles drove in tandem to the Chevron gas station;

 f. Lombera was alone in the Murano, which was registered to him and which he claimed to own; Lombera also said he rented the Toyota; A law enforcement officer called Tinzoo's phone number (as used by the CS) and observed the ringing of a cell phone visible in the Murano; The CS advised Lombera was the person he knew as Tinzoo; The driver of the Toyota said he had been paid to drive following Lombera;

 g. Tinzoo denied consent to search the vehicles; Officers conducted K9 searches and the dog alerted for the presence of narcotics. The vehicles were searched at the DEA office; The officers recovered five individually-wrapped packages of methamphetamine from the Murano's dashboard, which was confirmed by laboratory analysis to be 2,184 grams of actual methamphetamine;

5. That Declarant provided Lombera with copies of all discovery; That, during numerous visits with Lombera, Declarant reviewed the discovery with him page by page; Declarant further explained the statute, the sentencing guidelines, and his rights, including the right to trial;

6. That Declarant also discussed possible defenses and defense motions; In particular Declarant discussed the warrantless dog sniff and search of the Murano as potential issues in the case; Declarant advised Lombera that, based on her research, and the facts and evidence in this case, she believed (and she continues to believe) that success was unlikely on suppression motions raising those issues;

7. That Lombera indicated what he wanted was the "best deal" she could get for him in exchange for a guilty plea; Lombera thereafter knowingly and voluntarily entered into plea negotiations;

8. That Lombera pled guilty to the indictment pursuant to a plea negotiation which provided for a government recommendation of a three-level sentencing guideline reduction for acceptance of responsibility, pursuant to USSG 3E1.1, and for a sentence at the low-end of the applicable guideline range as determined by the Court;

Lombera reserved the rights to argue for further guideline reductions and a variance from the guideline range (unless he was found to be safety-valve eligible);

9. That the Court found the applicable sentencing guideline range, taking into account a full three-level reduction for acceptance of responsibility, was 210 to 262 months' imprisonment; Pursuant to the plea agreement, the government argued for a 210-month sentence; The court granted Declarant's request for a downward variance and imposed a below-guideline term of 188 months;

10. That Declarant conducted all necessary research, was diligent and prepared, and kept Lombera fully informed throughout the proceedings.

FURTHER Declarant sayeth naught.

DATED: March 26, 2015

CHERYL FIELD-LANG, Esq.
former counsel to
Fabian Barragan Lombera

## CERTIFICATE OF SERVICE

I, do hereby certify that on March 31, 2015, a copy of the attached Government's **RESPONSE TO 28 USC § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE OF PERSON IN FEDERAL CUSTODY** was sent via CM/ECF to all parties and to defendant Fabian Barragan Lombera via the United States Postal Service at the following address:

**Fabian Barragan Lombera**
47475-048
FCI Sheridan
PO Box 5000
Sheridan, OR 97378
PRO SE

/S/
ELLENROSE JARMOLOWICH
Legal Assistant